IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHERRY SALAMONE,                   )

                  )

          Plaintiff,          )

                  )

v.                        )    **Case No. 16-cv-9489**

                  )

UPSTREAM INVESTMENT PARTNERS,   )    **Honorable Ronald A. Guzman**
LLC, a limited liability Company,      )

                  )

          Defendant.       )

UPSTREAM INVESTMENT PARTNERS,   )

                  )

         Counter- Plaintiff,   )

                  )

v.                       )

                  )

SHERRY SALAMONE,              )

                  )

         Counter-Defendant.   )

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR FOR SUMMARY JUDGMENT

Defendant, Upstream Investment Partners, LLC ("UIP"), through its attorneys Owens & Laughlin LLC, and for its Memorandum in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction or for Summary Judgment, states as follows:

## FACTUAL BACKGROUND

Plaintiff filed her complaint on October 4, 2016. In her complaint, Plaintiff alleged overtime violations of the U.S. Fair Labor Standards Act, 29 U.S.C. 201, *et seq.* ("FLSA"), Illinois Minimum Wage Law, 805 ILCS 105, *et seq.* ("IMWL"), and the Illinois Wage Payment

and Collection Act, 820 ILCS 115/1, *et seq.* (IWPCA).[1]  Plaintiff seeks compensation based upon the aforesaid Acts for sums allegedly owed to her between 2011 and 2016; Specifically, Plaintiff seeks the following compensation based upon the following Acts:

<u>2011</u>  FLSA: $2,310.89
<u>2012</u>  FLSA: $3,619.88
<u>2013</u>  FLSA: $3,871.40
<u>2014</u>  FLSA: $5,149.06
<u>2015</u>  FLSA: $5,865.67
<u>2016</u>  FLSA: $1,129.90[2]

As it pertains to the portion of 2014 between October 4 and December 31, Plaintiff claims 19 hours, or the equivalent of $810.54 based upon Plaintiff's alleged overtime rate of compensation for purposes of alleged FLSA liability.[3]   As it pertains to the portion of 2013 between October 4 and December 31, Plaintiff claims 27 hours, or the equivalent of $1,286.82 based upon Plaintiff's alleged overtime rate of compensation for purposes of alleged FLSA liability.[4]

Defendant respectfully asserts there was never a violation of FLSA.  Alternatively, if the Court determines there was a violation of FLSA, it was not a knowing violation, and Plaintiff has testified that there is no evidence supporting a knowing violation.[5]

Plaintiff commenced employment with Defendant on January 7, 2011, pursuant to Plaintiff signing an offer letter that was prepared by Defendant, which began as follows:

---

[1] See Defendant's Statement of Uncontested Material Facts, paragraph 1.
[2] See Defendant's Statement of Uncontested Material Facts, paragraph 2.
[3] See Defendant's Statement of Uncontested Material Facts, paragraph 3.
[4] See Defendant's Statement of Uncontested Material Facts, paragraph 4.
[5] See Defendant's Statement of Uncontested Material Facts, paragraph 5.

Sherry,

It is with great pleasure that I offer you employment with Upstream Investment Partners is an office coordinator with the start date of Friday, January 7, 2010 *this is an exempt position* with the compensation package as follows: ...[6]

Plaintiff's compensation always exceeded the requirements for the administrative exemption of FLSA, at 29 CFR 200 and 29 U.S.C. 213, being a salary not less than $455.00 per week.[7]

Defendant is a full-service financial consulting firm.[8] Plaintiff's employment was terminated on April 22, 2016.[9] During Plaintiff's employment, she held the position of Office Coordinator. Plaintiff's employment with Defendant was entirely office work; none of Plaintiff's work constituted manual labor.[10]

A critical variable in hiring Plaintiff as Office Coordinator was that she had taken and passed the Financial Industry Regulatory Authority's ("FINRA") Series 7 and Series 66 exams.[11]

The Series 7 exam is FINRA's General Securities Representative Exam, which covers such topics as evaluating investment customer needs and financial situations, customer investment objectives, and opening, closing, and transferring investment client accounts; Series 7 also covers evaluating whether various financial products are suitable for customer needs, and verifying customer purchase instructions.[12] Series 7 is a six-hour exam, with 250 questions, plus 10 pretest questions.[13]

---

[6] See Defendant's Statement of Uncontested Material Facts, paragraph 6.
[7] See Defendant's Statement of Uncontested Material Facts, paragraphs 6 and 7.
[8] See Defendant's Statement of Uncontested Material Facts, paragraph 8.
[9] See Defendant's Statement of Uncontested Material Facts, paragraph 8.
[10] See Defendant's Statement of Uncontested Material Facts, paragraph 8
[11] See Defendant's Statement of Uncontested Material Facts, paragraph 9.
[12] See Defendant's Statement of Uncontested Material Facts, paragraph 10.
[13] See Defendant's Statement of Uncontested Material Facts, paragraph 10.

Series 66 is FINRA's Uniform State Law Exam, which covers such topics as client investment recommendations, strategies and investment vehicles for fee-based accounts, as well as regulatory, state and federal, legal and ethical requirements for the investment industry.[14]

Defendant's business is heavily regulated by FINRA and the U.S. Securities Exchange Commission ("SEC"). It is common that when defendant hires a financial advisor, said advisor is almost always a former financial advisor from a prior investment firm.[15] This process is referred to as "on-boarding", which involves the transfer of the financial advisor's FINRA licensure, and compliance with FINRA and the SEC's rules of transferring between investment firms as it relates to client accounts. FINRA and the SEC extensively regulate this process.[16]

Plaintiff was responsible for the on-boarding of new financial advisors and for the transferring of newly hired financial advisors, including their clients, from their former firms to Defendant.[17] A critical basis in the hiring of Plaintiff was the fact that Plaintiff had successfully passed the Series 7 and Series 66 exams.[18] New financial advisors relied upon Plaintiff's experience in the on-boarding process, and Plaintiff was the person most familiar with the process, with the possible exception of Defendant's Branch Manager (Nick Reiland).[19]

Plaintiff's duties as Office Coordinator were innumerable; in fact, when requested to identify Plaintiff's work tasks for Defendant, Plaintiff elected to attach a seven page written

---

[14] See Defendant's Statement of Uncontested Material Facts, paragraph 11.
[15] See Defendant's Statement of Uncontested Material Facts, paragraph 12.
[16] See Defendant's Statement of Uncontested Material Facts, paragraph 12.
[17] See Defendant's Statement of Uncontested Material Facts, paragraph 13.
[18] See Defendant's Statement of Uncontested Material Facts, paragraph 13.
[19] See Defendant's Statement of Uncontested Material Facts, paragraph 13

response, containing 217 separate bullet-pointed tasks in her answers to Defendant's interrogatories.[20]

After Plaintiff's termination, Plaintiff authored a resume' memorializing some of her core responsibilities as an employee of Defendant; Plaintiff represented that as an employee of Defendant, she "was responsible for the daily business operations of an independent financial services office that consists of 8 financial advisors, ..."[21] Plaintiff further represented on her resume' that Defendant:

> "included a tax practice since 2014, *and I have been the primary person responsible for organizing and running the tax practice*. I have also been responsible for assisting in organizing marketing events for the advisors in our office; as well *as all aspects of client service*, including gathering and processing account paperwork, *on-boarding new advisors, assistance in organizing and running educational workshops for clients and prospects*, and *placing trades for clients/advisors*". (Emphasis added).[22]

Defendant made available to its investment clients an income tax practice that consolidated the tasks of assisting in the collection materials (including the income reporting documents via the financial products that Defendant's financial advisors managed for the clients) and preparing income tax returns for the respective clients.[23]

Plaintiff was the person primarily responsible for organizing and running Defendant's income tax practice with respect to Plaintiff's clients.[24] In order to do so, Plaintiff received specialized training from two different "tax offices" that Defendant's tax practice was modeling

---

[20] See Defendant's Statement of Uncontested Material Facts, paragraph 14.
[21] See Defendant's Statement of Uncontested Material Facts, paragraph 15.
[22] See Defendant's Statement of Uncontested Material Facts, paragraph 15.
[23] See Defendant's Statement of Uncontested Material Facts, paragraph 16.
[24] See Defendant's Statement of Uncontested Material Facts, paragraph 17.

their practice after.[25]  Plaintiff had a role in training the financial advisors, accountants, and part-time staff working with Defendant regarding the processing of client income tax returns for Defendants' income tax practice.[26]  Plaintiff made certain that Defendant's clients income tax returns were done by the accountants on a timely basis, and, if they were not timely, Plaintiff interfaced between the client, financial advisor, and accountant to determine why the clients' income tax returns were not prepared in a timely manner; in order to track the preparation of the income tax returns for Defendant's clients, Plaintiff tracked the "clients when they came in" by means of a spreadsheet that she maintained to insure that each client's income tax paperwork did not fall through the cracks.[27]  Finally in this regard, Plaintiff was "responsible for making sure that all of our (Defendant's) policies and procedures were in place prior to the tax season coming on board" each tax year.[28]

Defendant has branch offices in numerous states throughout the U.S.; Plaintiff worked out of Defendant's branch office in Lisle Illinois.[29]  The Lisle office was the only office in the U.S. that had a "branch-support/cut-in" program, which was a multi-tiered program that allowed Plaintiff to increase her compensation by performing duties for the financial advisors at the Lisle branch that went beyond her normal duties.[30]  The compensation would be paid from the participating financial advisors' commissions that were received from the clients.[31]  The program was modeled after a similar program that was used by Plaintiff's former employer.[32]

---

[25] See Defendant's Statement of Uncontested Material Facts, paragraph 17,
[26] See Defendant's Statement of Uncontested Material Facts, paragraph 17.
[27] See Defendant's Statement of Uncontested Material Facts, paragraph 17.
[28] See Defendant's Statement of Uncontested Material Facts, paragraph 17.
[29] See Defendant's Statement of Uncontested Material Facts, paragraph 18.
[30] See Defendant's Statement of Uncontested Material Facts, paragraph 18.
[31] See Defendant's Statement of Uncontested Material Facts, paragraph 18.
[32] See Defendant's Statement of Uncontested Material Facts, paragraph 18.

According to Plaintiff, she and Nick Reiland (the Branch Manager) created the branch-support/cut-in program.[33] There were multiple levels of additional support rendered to the financial advisors, requiring increasing levels of additional compensation from the financial advisors' commissions that would be paid to Plaintiff.[34] Plaintiff worked with Mr. Reiland to create and author the documents defining the cost and level of ascending support for each branch-support/cut-in level.[35]

In Plaintiff's own words referring to her responsibilities for Defendant, Plaintiff admitted that "I was responsible for the daily operations on the administrative side of that office."[36]

Following Plaintiff's termination of employment, Plaintiff found employment within the financial industry in June 2016.[37] In conjunction with new employment, Plaintiff authorized her new employer to upload information regarding Plaintiff's background on the new employer's internet webpage.[38] The webpage advertised Plaintiff's experience as follows:

> "… Sherry spent nearly 10 years is a Registered Sales Assistant and Client Service Coordinator in the financial services industry. She provided sales support, *administrative services, office management and customer service management* for several of the prior firms top advisers in the Chicagoland area Sherry also brings with her over 20 years of book keeping/accounting experience, as well as personal tax preparation experience. (Emphasis added).[39]

The "10 years" referred to in the preceding paragraph included Plaintiff's employment with Defendant.[40]

---

[33]  See Defendant's Statement of Uncontested Material Facts, paragraph 19.
[34]  See Defendant's Statement of Uncontested Material Facts, paragraph 19.
[35]  See Defendant's Statement of Uncontested Material Facts, paragraph 19.
[36]  See Defendant's Statement of Uncontested Material Facts, paragraph 20.
[37]  See Defendant's Statement of Uncontested Material Facts, paragraph 21.
[38]  See Defendant's Statement of Uncontested Material Facts, paragraph 21.
[39]  See Defendant's Statement of Uncontested Material Facts, paragraph 21.
[40]  See Defendant's Statement of Uncontested Material Facts, paragraph 22.

## STANDARD OF REVIEW

FRCP Rule 12(b)(1) provides a defendant a procedural vehicle by which the defendant may move a federal court to dismiss a claim or suit on the ground that the court lacks subject-matter jurisdiction. The standard of review for a Rule 12(b)(1) motion to dismiss depends on how the defendant frames the motion. Hall-Moten v. Ill. Dep't of Corr., 2005 U.S. Dist. LEXIS 28252, 2005 WL 3088439 (N.D. Ill. Nov. 16, 2005). If the motion contends that the allegations of jurisdiction are facially insufficient to show jurisdiction, then the Rule 12(b)(1) standard of review mirrors the standard applied for R. 12(b)(6) motions. Id. But if the motion challenges the truth of the facts alleged, then the court may look beyond the face of the plaintiff's complaint to resolve the factual disputes. Id.

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). McDonnell v. Cournia, 990 F.2d 963, 967 (7th Cir. 1993). The non-moving party cannot rest on its allegations, but must set forth specific facts showing that there is a genuine issue of material fact. Id. at 586; Celotex Corp. v. Catrett, 477 U.S. 317, 322-26 (1986); McDonnell, 990 F.2d at 967. Merely alleging the existence of a dispute of material fact cannot defeat a motion for summary judgment. Samuels v. Wilder, 871 F.2d 1346, 1349 (7th Cir. 1989); Doe v. Small, 934 F.2d 743, 751 (7th Cir. 1991).

## ARGUMENT

**I.  PORTIONS OF PLAINTIFF'S FLSA CLAIMS ARE TIME BARRED.**

The FLSA at 29 U.S.C. 255 states:

> Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C. 201 et seq.], the Walsh-Healey Act, or the Bacon-Davis Act [1] —
> (a) if the cause of action accrues on or after May 14, 1947—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued; except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued;
> …

The question of whether an employer has acted willfully is a question of fact; however, the plaintiff must present sufficient evidence of willfulness to survive summary judgment. Rogers v. AT&T Servs., 2014 U.S. Dist. LEXIS 122238. See also Caraballo v. City of Chi., 969 F. Supp. 2d 1008, (2014) and Pignataro v. Port Authority of New York and New Jersey, 593 F.3d 265, 273 (3d Cir. 2010) (citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 135 n.13 (1988), affirming district court's summary judgment finding that employer's violation of the FLSA was not willful).

If there has been a violation of the FLSA overtime provisions, Plaintiff admits there is no evidence supporting a knowing violation on the part of Defendant.[41] Given that Plaintiff's complaint was filed on October 4, 2016, the above-cited two year limitation period restricts any alleged overtime coverage under the FLSA to the period of time between October 4, 2014 and October 4, 2016. Based upon Plaintiff's damage calculations within her answers to interrogatories, eliminating FLSA coverage from January 7, 2011 to October 3, 2014 restricts Plaintiff's FLSA claim to $810.54 in 2014, $5,865.67 in 2015, and $1,120.90 in 2016. The total amount of claimed FLSA overtime damages is a sum in the amount of $7,797.11.[42]

---

[41] See Defendant's Statement of Uncontested Material Facts, paragraph 5.
[42] See Defendant's Statement of Uncontested Material Facts, paragraph 3.

Defendant respectfully submits that Plaintiff is entitled no recovery in the case because her employment meets the criteria for being exempt from the FLSA, and the Court does not have subject matter jurisdiction over the case. However, for purposes of the statute of limitations, there is no material issue of fact in dispute that all but $7,797.11 of Plaintiff's FLSA overtime claims are time barred, based upon the application of 29 U.S.C. 255.

## II.   FOR PURPOSES OF SUMMARY JUDGMENT, PLAINTIFF'S EMPLOYMENT WAS EXEMPT FROM THE OVERTIME PROVISIONS OF THE FLSA BASED UPON THE ADMINISTRATIVE EXEMPTION.

Under the FLSA, employment is exempt from overtime-pay where an employee is employed in a bona fide administrative capacity. 29 U.S.C. § 213(a)(1); there is a three-part test to determine whether the administrative exemption applies:

    (a)   The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:

        (1) Compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;

        (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

        (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. Rogers v. AT&T Servs., 2014 U.S. Dist. LEXIS 122238, at *14 - 16.

As it pertains to the salary requirement, there is no material issue of fact that Plaintiff's salary meets the salary requirements. At $455 per week, annual salary would have to equal or be

greater than $23,660.00 per year. Each and every year that Plaintiff was employed by Defendant, her salary has more than doubled the minimum threshold.[43]

Plaintiff was never engaged in manual labor, and the entirety of Plaintiff's employment was dedicated exclusively to office work, holding the position of "Office Coordinator".[44]

Taking the issues of whether Plaintiff's employment was (1) "directly related to the management or general business operations of the employer or the employer's customers" and (2) whether Plaintiff's primary duties includes the exercise of discretion and independent judgment with respect to matters of significance, there is similarly no material issue of fact.

As to the first of these requirements, 29 C.F.R. § 541.201 (a) states that:

> "Exempt employees "must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."

As to the second requirement, the court in Rogers cited 29 C.F.R. § 541.202(a) as promulgating a non-exclusive list of relevant factors in assessing whether employee exercised discretion and independent judgment for purposes analyzing the whether the exemption applied, including:

> Whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long or short-term business objectives; whether the employee investigates and resolves

---

[43] See Defendant's Statement of Uncontested Material Facts, paragraphs 6 and 7
[44] See Defendant's Statement of Uncontested Material Facts, paragraph 8.

matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes [*19] or resolving grievances. Id. 21.

Applying these standards to the instant action, Plaintiff's duties in assisting with the on-boarding of new financial advisors in order to navigate FINRA's compliance regulations is hardly akin to working on an assembly line.[45] In Plaintiff's own words, "running and organizing" Defendant's tax practice is a far cry from selling products in a retail mercantile establishment.[46] Additionally, assisting in the authorship of Defendant's branch-support/cut-in program goes beyond retail sales and manufacturing, assembly-line work.[47]

Plaintiff has admitted that she was "the primary person responsible for organizing and running the tax practice".[48] This is the type of employee that has authority to affect, interpret, and implement operating practices within the meaning of 29 CFR § 541.202(a).

Plaintiff has conceded that she "was responsible for the daily operations on the administrative side of that office (referring to Defendant's business)."[49] At a minimum, this responsibility significantly affects the administrative functions of Defendant's business operations. Defendant respectfully submits that running and organizing Defendant's tax practice and assisting in the authorship of Defendant's branch-support/cut-in program constitute major assignments in Defendant's business operations. Finally in this regard, being the person most familiar with the on-boarding process of new financial advisors, as well as one who provides training to Defendant's financial advisors, accountants, and part-time staff regarding the policies

---

[45] See Defendant's Statement of Uncontested Material Facts, paragraph 13.
[46] See Defendant's Statement of Uncontested Material Facts, paragraph 15.
[47] See Defendant's Statement of Uncontested Material Facts, paragraph 19
[48] See Defendant's Statement of Uncontested Material Facts, paragraph 15.
[49] See Defendant's Statement of Uncontested Material Facts, paragraph 20.

and procedures of the tax practice would render Plaintiff an employee who regularly provides consultation to other managers of Defendant.[50]

In sum, Defendant respectfully submits that this Court should grant summary judgment because there is no material issue of genuine fact that Plaintiff's employment qualifies under the administrative exemption of 29 U.S.C. § 213.

Relatedly, because Defendant's employment is exempt under the FLSA, the Court does not have subject matter jurisdiction pursuant to federal question jurisdiction. Having no alternative basis for subject matter jurisdiction, the Court should dismiss the instant action with prejudice.

Respectfully Submitted by:

_____
One of Defendant's Attorneys

OWENS & LAUGHLIN LLC
TROY C. OWENS
Illinois Bar No. 6208293
towens@owenslaughlin.com
9 Crystal Lake Road, Suite 205
Lake in the Hills, Illinois 60156
Telephone: (847) 854-8700
Facsimile: (847) 854-8777

---

[50] See Defendant's Statement of Uncontested Material Facts, paragraph 17.