

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
JAN 11 2018
RONALD A. GUZMAN, JUDGE
UNITED STATES DISTRICT COURT

| | |
|---|---|
| SHERRY SALAMONE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16-cv-9489 |
| ) | |
| UPSTREAM INVESTMENT PARTNERS, ) | |
| LLC, a limited liability Company, ) | **Honorable Judge Ronald A.** |
| ) | **Guzman** |
| ) | |
| Defendant. ) | |

| | |
|---|---|
| UPSTREAM INVESTMENT PARTNERS, ) | |
| ) | |
| Counter- Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| SHERRY SALAMONE, ) | |
| ) | |
| Counter-Defendant. ) | |

## DEFENDANT/ COUNTERCLAIMANT'S STATEMENT OF NOT AGREED/ CONTESTED FACTS AND CONCLUSIONS OF LAW

Defendant/Counterclaimant's, Upstream Investment Partners, LLC ("UIP"), through its attorneys Owens & Laughlin LLC, submits the following Statement of Not Agreed and Contested Facts and Conclusions of Law.

**DEFENDANT'S STATEMENT OF NOT AGREED/CONTESTED ADDITIONAL FACTS**

**Facts Related to Statute of Limitations**

1. There was no violation of the Acts. Plaintiff cannot produce sufficient evidence to discharge her burden of proof that Defendant violated the Acts. Alternatively,

1

if the Court determines there was a violation of FLSA, it was not a knowing violation, and Plaintiff testified that there is no evidence supporting a knowing violation.

**Facts Related to Exemption**

2. Plaintiff's compensation was as follows:
   * 2011: $923.00 per week, and $48,000.00 per year;
   * 2012: $1,103.00 per week, and $57,360.00 per year;
   * 2013: $1,137.00 per week, and $59,160.00 per year;
   * 2014: $1,137.00 per week, and $59,160.00 per year;
   * 2015: $1,160 per week, and $60,360.00 per year;
   * 2016: $1,160.00 per week, and projected $60,360.00 per year.

3. A crucial variable in hiring Plaintiff as Office Coordinator was that she had taken and passed the Financial Industry Regulatory Authority's ("FINRA") Series 7 and Series 66 exams.

4. Defendant's business is regulated by FINRA and the U.S. Securities Exchange Commission ("SEC"). It is common that when defendant hires a financial advisor, said advisor is almost always a former financial advisor from a prior investment firm. This process is referred to as "on-boarding", which involves the transfer of the financial advisor's FINRA licensure, and compliance with FINRA and the SEC's rules of transferring between investment firms as it relates to client accounts coming from one firm to another. FINRA regulates this process.

5. Plaintiff was responsible for the on-boarding of new financial advisors for the transferring of newly hired financial advisors, including their clients, from their former firms to Defendant. New financial advisors relied upon Plaintiff's experience in the on-boarding process, and Plaintiff was the person most familiar with the process, with the possible exception of Defendant's Branch Manager (office supervisor).

6. Plaintiff's duties as Office Coordinator were innumerable; when requested to identify Plaintiff's work tasks for Defendant, Plaintiff elected to attach a seven page written response, containing 217 separate bullet-pointed tasks in her answers to Defendant's interrogatories.

7. Plaintiff represented on her resume' that Defendant:

   "included a tax practice since 2014, and I have been the primary person responsible for organizing and running the tax practice. I have also been responsible for assisting in organizing marketing events for the advisors in

2

our office; as well as all aspects of client service, including gathering and processing account paperwork, on-boarding new advisors, assistance in organizing and running educational workshops for clients and prospects, and placing trades for clients/advisors."

8. Plaintiff was the person primarily responsible for organizing and running Defendant's income tax practice with respect to Plaintiff's clients. Plaintiff received specialized training from two different tax offices that Defendant's tax practice was modeling their practice after.

9. Plaintiff had a role in training the financial advisors, accountants, and part-time staff working with Defendant regarding the processing of client income tax returns for Defendants' income tax practice.

10. Plaintiff made certain that Defendant's clients income tax returns were done by the accountants on a timely basis, and, if they were not timely, Plaintiff interfaced between the client, financial advisor, and accountant to determine why the clients' income tax returns were not prepared in a timely manner; in order to track the preparation of the income tax returns for Defendant's clients, Plaintiff tracked the "clients when they came in" by means of spreadsheet that she maintained to insure that each client's income tax paperwork did not fall through the cracks.

11. Defendant has branch offices in numerous states throughout the U.S.; Plaintiff worked out of Defendant's branch office in Lisle Illinois. The Lisle office was the only office in the U.S. that had a "branch-support/cut-in" program, which was a multi-tiered program that allowed Plaintiff to increase her compensation by performing duties for the financial advisors at the Lisle branch that went beyond her normal duties.

12. The compensation would be paid from the participating financial advisors' commissions that were received from the clients. The program was modeled after a similar program that was used by Plaintiff's former employer.

13. According to Plaintiff, she and Nick Reiland (the Branch Manager) created the branch-support/cut-in program. There were multiple levels of additional support rendered to the financial advisors, requiring increasing levels of additional compensation from the financial advisors' commissions that would be paid to Plaintiff. Plaintiff worked with Mr. Reiland to create and author the documents defining the cost and level of ascending support for each branch-support/cut-in level.

**DEFENDANT'S NOT AGREED/CONTESTED CONCLUSIONS OF LAW**

1. The FLSA at 29 U.S.C. 255 sets the statutory limitation to bring FLSA claims at two years. As such, Plaintiff's FLSA claims that have been alleged between January 1, 2011 and October 3, 2014 are time barred.

2. In the alternative, in the event that the Court determines that Plaintiff discharged her burden to prove that the Defendant committed a knowing violation of FLSA, under 29 U.S.C. 255, Plaintiff's FLSA claims that have been alleged between January 1, 2011 and October 3, 2013 are time barred.

3. The Illinois Minimum Wage Law at 820 ILCS 105/12(a) sets the statute limitations at three years. Under 820 ILCS 105/12(a), Plaintiff's IMWL claims that have been alleged between January 1, 2011 and October 3, 2013 are time barred.

4. The Illinois Wage Payment and Collection Act sets the statute limitations at one year. Under 820 ILCS 115/11, Plaintiff's IWPCA claims that have been alleged between January 1, 2011 and October 3, 2015 are time barred.

5. Plaintiff's compensation was on a salary basis at a rate that exceeded $455 per week. 29 CFR 541.200

6. Plaintiff's primary duties constituted the performance of office or non-manual work directly related to the management or general business operations of UIP employer. 29 CFR 541.200

7. Plaintiff's primary duties constituted the performance of office or non-manual work directly related to the management or general business operations of UIP's customers. 29 CFR 541.200.

8. Plaintiff's primary duty included the exercise of discretion and independent judgment with respect to matters of significance. 29 CFR 541.200

**COUNTERCLAIMANT'S STATEMENT OF NOT AGREED/CONTESTED FACTS**

1. UIP permitted SALAMONE paid time off as one of the conditions of her employment, pursuant to the employee handbook.

2. By 2016, UIP allowed SALAMONE 200 hours per year of paid time off, subject to UIP's policies and procedures for earning and taking said paid time each year.

4

3. Under said policies and procedures, the 200 hours would accrue each year, but could only be taken in increments that were earned by each employee over the calendar year.

4. According to UIP's policies and procedures, up to 80 hours of unused paid time off could be carried over from the previous calendar. UIP's policies and procedures also only permitted to employees to take the paid time off that annually accrued to them in increments as were earned as the calendar year proceeded.

5. Under this formula, UIP employees were allowed to take up to 16.6 hours per calendar month.

6. In February 2016, SALAMONE scheduled a surgical procedure, causing her to be absent from work for approximately six weeks.

7. On February 10, 2016, SALAMONE falsely communicated to her UIP supervisors that she had enough paid time off to cover the time that she would be off from work at UIP to cover the approximate six weeks that she was required for the surgery and her recovery.

8. The statement referred to above was a material misrepresentation of fact that SALAMONE knew was untruthful and that SALAMONE made intending to deceive UIP into paying her for paid time off that she knew she was not owed.

9. SALAMONE knew at the time of speaking to UIP that she did not have sufficient earned paid time off to pay her during her absence for the surgery.

10. UIP relied upon these material misstatements of fact and allowed SALAMONE's salary to be paid to her, when in reality SALAMONE had not earned the vast majority of the paid time off that she alleged that she earned.

11. SALAMONE was off from work at UIP from the second week of February 2016 until she returned to work on April 18, 2016.

12. Shortly thereafter, UIP learned that SALAMONE misrepresented the amount of paid time off that she earned and confronted SALAMONE regarding the same. SALAMONE's last day of employment at UIP was April 22, 2016, on which date SALAMONE resigned her employment.

13. Upon an audit of the actual time of paid time off that SALAMONE earned in 2016, while adding the value 80 hours of carry-over paid time off from 2016 that SALAMONE earned during the previous year, UIP learned that relying on the misrepresentations of fact that SALAMONE communicated to UIP, as alleged above, led UIP to overpay SALAMONE a sum equal to $8,125.38.

14. UIP would never have paid SALAMONE said sum if SALAMONE not made the misrepresentations of fact alleged above.

## COUNTERCLAIMANT'S STATEMENT OF NOT AGREED/CONTESTED CONCLUSIONS OF LAW

### Conclusions Related to Fraud

1. The statements that SALAMONE made to UIP alleged above were false statements of material fact that SALAMONE knew were false upon communicating the same. Time Savers, Inc. v. LaSalle Bank, N.A., 371 Ill. App. 3d 759 (2007).

2. SALAMONE intended to induce UIP to act upon said misrepresentations of fact. Time Savers, Inc. v. LaSalle Bank, N.A., 371 Ill. App. 3d 759 (2007).

3. UIP acted in reliance said misrepresentations of fact by paying SALAMONE the sum of $8,125.38, a sum that SALAMONE knew she was not entitled to. Time Savers, Inc. v. LaSalle Bank, N.A., 371 Ill. App. 3d 759 (2007).

4. UIP suffered damages in that UIP paid SALAMONE the sum of $8,125.38. Time Savers, Inc. v. LaSalle Bank, N.A., 371 Ill. App. 3d 759 (2007).

### Conclusions Related to Breach of Employee Fiduciary Duty

5. During SALAMONE's employment with UIP, SALAMONE owed UIP, as SALAMONE's employer, a fiduciary duty to deal with UIP in good faith and fair dealing, based upon SALAMONE's status as an employee of UIP. Campbell v. Eagle Serv. Corp., 1995 U.S. Dist. LEXIS 9717 (1995).

6. SALAMONE breached her employee fiduciary duty to UIP by making statements that SALAMONE alleged above to UIP that SALAMONE knew were false upon communicating the same, and intending to induce UIP to act upon said. Campbell v. Eagle Serv. Corp., 1995 U.S. Dist. LEXIS 9717 (1995).

### Conclusions Related to Unjust Enrichment

7. SALAMONE has been unjustly enriched by payment of $8,125.38 because, contrary to the misrepresentations that she made as alleged above, she had not earned the paid time off compensation that she received. Karen Stavins Enterprises,

6

<div style="margin-left: 2em;">

Inc. v. Community College District No. 508, County of Cook, 2015 IL App (1st) 150356, ¶ 7 (2015).

8. SALAMONE was not entitled to receive that $8,125.38 paid to her as paid time off. Karen Stavins Enterprises, Inc. v. Community College District No. 508, County of Cook, 2015 IL App (1st) 150356, ¶ 7 (2015).

9. SALAMONE was not justified in making the representations alleged above, inducing UIP to pay SALAMONE $8,125.38. Karen Stavins Enterprises, Inc. v. Community College District No. 508, County of Cook, 2015 IL App (1st) 150356, ¶ 7 (2015).

</div>

Respectfully Submitted

By: _____

One of Defendant's Attorneys

Troy C. Owens
Attorney No. 6208293
Owens & Laughlin LLC
9 W. Crystal Lake Road, Suite 205
Lake in the Hills, Illinois 60142
847.847.854.8700
Fax - 847.854.8777