IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **Sherry Salamone,** | ) | |
| Plaintiff, | ) | Case No: 16 C 9489 |
| | ) | |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| **Upstream Investment Partners, LLC,** | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

For the reasons set forth below, Defendant's motion for summary judgment [37] is denied.

### STATEMENT

**Background**

Defendant is a full-service financial consulting firm. (Pl.'s Resp. Def.'s Stmt. Facts, Dkt. # 42, ¶ 8.) Plaintiff began work with Defendant as an office coordinator on January 7, 2011, and her employment was terminated on April 22, 2016. (*Id*. ¶¶ 6, 8.) Plaintiff alleges overtime violations pursuant to the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL"), and the Illinois Wage Payment Collection Act ("IWPCA"). Defendant moves for summary judgment as to the FLSA claim.

**Standard**

Summary judgment is proper when the "'materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials' show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017) (quoting Fed. R. Civ. P. 56(a)). The party opposing summary judgment "cannot merely rest on its pleadings; it must affirmatively demonstrate, by producing evidence that is more than 'merely colorable' that there is a genuine issue for trial." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**Analysis**

While the FLSA requires employers to pay its employees overtime premiums for hours worked in excess of forty hours, certain classes of workers are exempt from the FLSA's coverage. 29 U.S.C. §§ 207, 213. Under section 213(a)(1), "any employee employed in a bona fide executive, administrative, or professional capacity" is exempt from the FLSA's overtime requirements. 29 U.S.C. § 213(a)(1). Defendant contends that Plaintiff was exempt from the FLSA as an administrative employee.

Pursuant to regulations promulgated by the Department of Labor ("DOL"), an "employee employed in a bona fide administrative capacity" shall mean any employee: "(1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . , exclusive of board, lodging or other facilities;[1] (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(1)-(3). Plaintiff does not dispute that she received a salary in excess of $455.00 per week or that her primary duties consisted of office work and did not include manual labor. Plaintiff contends, however, that her job did not relate to the "management or general business operations" of Defendant under the second prong and she did not "exercise discretion or independent judgment with respect to matters of significance" under the third.

With respect to whether her job related to the management or general business operations of Defendant, Plaintiff asserts that the work she performed must directly relate to the business operations of the employee's *customers*. (Pl.'s Resp., Dkt. # 43, at 6.) This assertion is unsupported by any citation to authority, and contradicts the express language of the regulation, so the Court will not consider it. The undisputed record establishes that Plaintiff's work "directly related to the management and general business operations of" Defendant or its customers, and therefore, the second prong is satisfied.

The exercise of discretion prong, as used in this regulation, means that an employee engages in "the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). The DOL has provided a non-exclusive list of relevant factors to assist in determining whether an employee exercises discretion and independent judgment, including:

---

[1] According to the DOL website, it "is undertaking rulemaking to revise the regulations located at 29 C.F.R. part 541, which govern the exemption of executive, administrative, and professional employees from the Fair Labor Standards Act's minimum wage and overtime pay requirements. Until the Department issues its final rule, it will enforce the part 541 regulations in effect on November 30, 2016, including the $455 per week standard salary level." *See* https://www.dol.gov/whd/overtime/fs17g_salary.pdf (last visited Jan. 10, 2018).

> [W]hether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

*Id*. at § 541.202(b).

The exercise of discretion "must be more than the use of skill in applying well-established techniques, procedures or specific standards" and "does not include . . . recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work." *Id*. at § 541.202(e). The employer has the burden of demonstrating that an employee is exempt. *Schaefer–LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 571 (7th Cir. 2012).

In support of its contention that Plaintiff was an exempt administrative employee, Defendant points to the following:

- Plaintiff assisted in the duties of "on-boarding"[2] new financial advisers pursuant to regulations set forth by the Financial Industry Regulatory Authority ("FINRA") (Pl.'s Resp. Def.'s Stmt. Facts, Dkt. # 42, ¶ 13.)
- Plaintiff represented on her resume that she was "responsible for the daily business operations of an independent financial services office that consists of 8 financial advisers." (*Id*. ¶ 15.)
- Plaintiff further represented on her resume that Defendant's business "included a tax practice since 2014, and I have been the primary person responsible for organizing and running the tax practice. I have also been responsible for assisting in organizing marketing events for the advisors in our office; as well as all aspects of client service, including gathering and processing account paperwork, on-boarding new advisors, assistance in

---

[2] According to Defendant, "on-boarding" refers to the process of transferring a financial adviser's license from a prior investment firm in compliance with rules set forth by FINRA and the Securities and Exchange Commission." (Pl.'s Resp. Def.'s Stmt. Facts, Dkt. # 42, ¶ 12.)

- organizing and running educational workshops for clients and prospects, and placing trades for clients/advisors." (*Id.*)
- In order to run Defendant's tax practice, Plaintiff received training from two different tax offices after which Defendant was modeling its tax practice. (*Id.* ¶ 17.) Plaintiff had a role in training the financial advisors, accountants, and part-time staff working with Defendant regarding the processing of client income tax returns. (*Id.*)
- Plaintiff was responsible for making sure that all of Defendant's policies and procedures were "in place" prior to the tax season each year. (*Id.*)
- Plaintiff tracked the receipt and status of clients' tax returns on a spreadsheet to make certain that none "fell through the cracks." (*Id.*)
- Plaintiff also ensured that Defendant's clients' income tax returns were completed by the accountants on a timely basis and, if they were not, Plaintiff communicated with the clients, financial advisors, and accountants to determine the reason for the delay. (*Id.*)
- In conjunction with the Defendant's branch manager, Plaintiff created the "branch-support/cut-in" program for the Lisle, Illinois office where she worked, "which was a multi-tiered program that allowed Plaintiff to increase her compensation by performing duties for the financial advisors at the Lisle branch that went beyond her normal duties." (*Id.* ¶ 18.) Plaintiff worked with the Branch Manager to create and author the documents defining the cost and level of ascending support for each branch-support/cut-in level. (*Id.*)

Other than reciting Plaintiff's tasks and setting forth the relevant federal regulations, Defendant provides no actual analysis of Plaintiff's duties as they relate to the administrative exemption. Nor does Defendant cite to any cases. For example, it simply states without any record support that:

> In a financial services firm, where revenue is generated as [a] result of the fees and commissions from each financial advisor's book of business, transferring these revenue sources to Defendant's gross economic production is an important matter to Defendant's business operations. Being the primary person coordinating the financial advisors' continued licensure through FINRA is also critical to the business operations of the firm because if FINRA does not authorize the transfer, the firm loses a financial advisors' economic production. Revenue is the life blood of the business.

(Def.'s Reply, Dkt. # 44, at 9.) While this may be true, Defendant points to no evidence in support of these assertions. Defendant goes on to argue that the fact that Plaintiff made sure all of the policies and procedures were "in place" prior to the tax season removes Plaintiff "by definition . . . from being one who is subject to undeviating compliance to office procedure, to one who has been delegated the responsibility to put office procedure and policy into effect, at

4

least for Defendant's clients' income tax practice." (*Id*.) Without more, the Court fails to see the logical jump Defendant makes. Ensuring that procedures are "in place" could include numerous responsibilities from ministerial tasks to high-level policymaking. It is simply not clear from the record where on the spectrum Plaintiff's responsibilities fell.

Moreover, Plaintiff asserts that she did not serve in an advisory capacity, nor did she collect and analyze information regarding customers' income, assets, investments or debts, determine what financial products meet customers' needs and financial circumstances or advise customers regarding the advantages and disadvantages of different financial products. (Pl.'s Resp., Dkt. # 43, at 7.) Plaintiff further points out that her supervisor, Nick Reiland, testified that Plaintiff's tasks included a number of "mundane" tasks, such as preparing documents and confirming appointments, making coffee, reordering supplies, cleaning conference rooms, and filling out paperwork for the financial advisors. (Def.'s Resp. Pl.'s Stmt. Facts, Dkt. # 45, ¶ 1.) With respect to the on-boarding of new financial advisors, Plaintiff characterizes her duties as setting up the telephone and computer and filling out paperwork to execute the transfer. It is disputed whether on-boarding required advanced knowledge acquired by a prolonged course of specialized knowledge, whether Plaintiff had supervisory authority over anyone or had the power to hire or fire anyone. (*Id*. ¶¶ 3, 5.)

The Court finds based on the above that a genuine dispute of material fact exists as to whether Plaintiff was employed in an administrative capacity such that she was exempt from the FLSA, and therefore denies Defendant's motion for summary judgment on that issue.

Defendant next asserts that portions of Plaintiff's FLSA claim are time-barred. Pursuant to 29 U.S.C. § 255(a), any cause of action brought under the FLSA must be commenced within two years after the cause of action accrued. 29 U.S.C. § 255(a). The statute of limitations is extended to three years if the cause of action arises out of a willful violation. *Id*. "The burden of proof to establish a willful violation lies with the FLSA [p]laintiff[]." *Cottle v. Falcon Holdings Mgmt., LLC*, 892 F. Supp. 2d 1053, 1074 (N.D. Ind. 2012). According to Defendant, because Plaintiff's complaint was filed on October 4, 2016, the two-year statute of limitations restricts any overtime recovery to the time period between October 4, 2014 and October 4, 2016, which would total $7,797.11.

The Court, however, concludes that it "is premature to consider the issue of willfulness where, despite the Court's denial of [Defendant's] summary judgment motion, 'there has been no finding that defendants violated the FLSA.'" *Tamas v. Family Video Movie Club, Inc.*, No. 11 C 1024, 2013 WL 1286693, at *9 (N.D. Ill. Mar. 28, 2013) (citing *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1323–24 (11th Cir. 2007) (ruling reserved until FLSA violation established)*; Espenscheid v. DirectSat USA, LLC*, No. 09–cv–625, 2011 WL 10069108, at *30 (W.D. Wis. Apr. 11, 2011); *Carlson v. C.H. Robinson Worldwide, Inc.*, Nos. 02–3780, 02–4261, 2005 WL 758601, at *15 (D. Minn. Mar. 30, 2005) ("under the FLSA, liability is a predicate to a willfulness analysis and to a finding of liquidated damages"); *Cooke v. Gen. Dynamics Corp.*, 993 F. Supp. 56, 65-66 (D. Conn. Jun. 16, 1997) (determination of whether employer willfully

violated FLSA premature where material issues of fact precluded summary determination of underlying issue of whether employees were covered by FLSA)).

**Conclusion**

For the reasons stated above, Defendant's motion for summary judgment is denied. As a final observation, the Court notes that it allowed Defendant to file a late summary judgment motion in the interests of efficiency. Had the Court known that the parties were going to elect to proceed without a jury, it would have denied leave to file the summary judgment motion and simply moved ahead with the bench trial. Thus, contrary to conserving the parties' and the Court's time and resources, the manner in which the parties have proceeded has essentially doubled the work involved for the Court and significantly increased the attorneys' fees expended on this relatively low-damages case.

**Date**: January 16, 2018

　　　　　　　　　　　　　　　　　　　　　　　**Ronald A. Guzmán**
　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**